UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cause No. 4:16CR00440-3 RLW |
| | ) | |
| KEHINDA MITCHELL, | ) | |
|     Defendant. | ) | |

### KEHINDA MITCHELL'S SENTENCING MEMORANDUM
*Request for Variance*

Respectfully Submitted,

/s/ *Raphael O. Morris II*
Raphael O. Morris II # 55245MO
Attorney for Defendant
6101 Delmar Blvd., Suite A
St. Louis, MO 63112
Phone: 314-241-5900
rm@themorrisfirmSTL.com

I.   Introduction

Mr. Mitchell respectfully submits this memorandum in order to provide information to assist the Court in fashioning a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of punishment as required by 18 U.S.C.S §3553(a) in light of *United States v. Booker,* 125 S. Ct. 738 (2005).

*Booker* restored district courts' ability to fashion a sentence tailored to the individual circumstances of the case and Mr. Mitchell by requiring courts to consider factors other than the sentencing range prescribed by the United States Sentencing Guidelines. Indeed, under Section 3553(a), courts are *required* to sentence below the range if such sentence would be sufficient to achieve the purposes of punishment. Here, Mr. Mitchell respectfully requests that the Court consider several important circumstances of this case in fashioning a sentence. *First*, Mr. Mitchell's good character, limited criminal history, unblemished personal history, as attested to by the people who have written to the Court, show that his criminal behavior in this case is truly aberrant and that he poses no risk of recidivism. *Second*, the offense in this case, specifically, Mr. Mitchell's role in the offense. *Third,* the nearly fifteen years that Mr. Mitchell served, unlawfully, for a 1995 murder conviction in the Circuit Court of Cook County, Illinois that was ultimately dismissed by the State's Attorney after new evidence of perjury by the Chicago Police Department.

II.   Procedural Background

On November 21, 2017, Mr. Mitchell pled guilty to Count I to conspiracy to commit offenses against the United States in violation of 18 U.S.C. § 371, in Count II to Interstate Transportation of Stolen Vehicle in violation of 18 U.S.C. § 2312 and U.S.C § 2 and Fraudulent Use of Access Devices in violation of18 U.S.C. § 1029(a)(2), 18 U.S.C. § 1029(c)(1)(A)(i) and U.S.C. § 2. He now stands before the Court for sentencing.

III.     Post-Booker Sentencing Considerations

The Court is no doubt aware of the broad ramifications of *United States v. Booker* for this proceeding. The sentencing guideline range is no longer binding on the Court, but is only one of five factors to be considered in determining the sentence. *Booker*, 125 S. Ct. at 764-65. The other four factors are (1) the nature and circumstances of the offense and the history and characteristics of Mr. Mitchell; (2) the kinds of sentence available; (3) the need to avoid unwarranted sentencing disparity; and (4) the need to provide restitution. *Id.*; 18 U.S.C. § 3553(a)(1),(a)(3),(a)(6)-(7).

In considering the Section 35553(a) factors, the sentencing guidelines are to be given no more or less weight than any other factor. *See United States v. Jaber*, 362 F. Supp. 2d 365, 370-76 (D.Mass.2005) (providing comprehensive analysis of why sentencing guidelines do not reflect statutory purposes of punishment); *United States v. Ranum*, 353 F. Supp. 2d 984, 975 (E.D. Wis. 2005) (same).

Perhaps even more important, however, is that *Booker* establishes a new, independent limit on the sentence that may be imposed. The primary sentencing mandate of §3553(a) states that courts must impose the minimally sufficient sentence to achieve the statutory purposes of punishment—justice, deterrence, incapacitation, and rehabilitation:

> The court shall impose a sentence *sufficient, but not greater than necessary*, to comply with the purposes set forth in [18 U.S.C § 3553(a)(2)].

18 U.S.C. § 3553(a) (emphasis added). This so-called "parsimony provision" is not simply a factor to be considered in determining sentence; it represents a cap above which the Court is *statutorily prohibited* from sentencing-even when a greater sentence is recommended by the sentencing guidelines. *See United States v. Denardi*, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, Jr., concurring in part, dissenting in part).

    IV.    The Sentencing Factors as Applied to Mr. Mitchell

In *United States v. Hunt* 459 F. 3d 1180, 1182 (11th Ci. 2006), the Court summarized the sentencing factors that a sentencing court must consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed-(a) to reflect the seriousness of the offense, to promote respect for the law and to (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established…. (5) any pertinent [Sentencing Commission] policy statement; (6) the need to avoid unwarranted sentencing disparities among defendants with similarly records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

As recognized in *Hunt*, there has been a continuing debate among the courts as to how much weight should be given to one of the factors, the Sentencing Guidelines. *Hunt*, 459 F.3d at 1183-1184. As recognized by Judge Tjoflat in *United States v. Glover*, 431F.#d

744, 752-753 (11th Cir. 2005), in some cases the Guidelines may have little persuasive force in light of some of the other § 3553 (a) factors: Although "judges must still consider the sentencing range contained in the guidelines,….. that range is now nothing more than a suggestion that may or may not be persuasive…when weighed against the numerous other considerations listed in [§3553 (a)]." *Id*. At 787 (Stevens, J.., dissenting) Indeed as one district judge has already observed, the remedial majority in Booker directs courts to consider all of the §3553 (a) factors, many of which the guidelines either reject or ignore. For example, under §3553 (a) (1) a sentencing court must consider the "**history and characteristics of the defendant**." But under the guidelines, courts are generally forbidden to consider the defendant's age, his education and vocational skills, his **mental and emotional condition**, his physical condition including drug or alcohol dependence, his employment record, his family ties and responsibilities, his socio-economic status, his civic and military contributions and **his lack of guidance as a youth**. The guidelines prohibition of considering these factors cannot be squared with the §3553 (a)(1) requirement that the court evaluate the "history and characteristics of the defendant." United States v. Ranum, 353 F. Supp. 984, 986 (E.D. Wis 2005). Accordingly, aside from the sentencing guidelines range, the Section §3553(a)(1) factors are particularly relevant in Mr. Mitchell's case: the nature and circumstances of the offense and the history and characteristics of Mr. Mitchell. 18 U.S.C. § 355(a)(1).

   A. <u>Mr. Mitchell's History and Characteristics and the Nature and Circumstances of the Offense</u>

   1. *Mr. Mitchell's Good Character, Limited Criminal History and Personal History*

Mr. Mitchell was born on September 10, 1976, in Chicago, Illinois. He is forty-one (41) years of age. In addition to earning his GED, Mr. Mitchell is a trained barber. Mr. Mitchell is the father of two minor daughters, ages 5 & 7, to whom he plays an active role in their lives.

On the afternoon of July 22, 1992 two gunmen opened fire on a group of people standing on a street corner in Chicago, Illinois, killing one and wounding two others. Witnesses said the two gunmen were between 18 and 24. Police identified and arrested a suspect who allegedly implicated fifteen (15) year old Kehinda Mitchell and one other individual as the shooters.

On August 1, 1992, weeks before Kehinda was to start his freshmen year at Hyde Park Prep Academy, his mother surrendered him to the Chicago Police for questioning related to the homicide. What Kehinda and his mother could not have known is that they were not cooperating with an honest investigation. After Kehinda requested an attorney, police continued to interrogate him, making threats, drawing their guns and making promises of probation if he admitted his involvement. Mr. Mitchell was subsequently charged as an adult with first-degree murder and two counts of aggravated battery.

On April 7, 1995, the trial judge declared a mistrial when the jury was unable to reach a verdict. After Mr. Mitchell's first trial came close to an acquittal, Chicago Detective Michael McDermott threatened another young man into giving false testimony (since recanted) that Mr. Mitchell was a gang member seeking to retaliate against the victim. After a second trial in July of 1995 Mr. Mitchell was convicted.

Mr. Mitchell's conviction was the result of a disturbing pattern of police misconduct, as literally every piece of evidence presented at his trial had its origins in fabrication or witness coercion from police. Mr. Mitchell's convictions were upheld by the Illinois Court of Appeals in 1998 and he filed for post-conviction relief in 2002. Mr. Mitchell continued to fight to prove his innocence after being released in 2008 on parole by retaining The Exoneration Project at the University of Chicago Law School.

Before this incident, Kehinda Mitchell had never been in trouble or had any significant interactions with the police prior to his arrest in the aforementioned case. Since being released from prison Mr. Mitchell has only one conviction. Since being incarcerated on the current charge, Mr. Mitchell has been a model inmate as indicated by the attached letter.

2. The Nature and Circumstances of the Offense

The offense in this case is serious. As Mr. Mitchell has accepted responsibility and entered a timely plea for the charged offenses. The offense involved Mr. Mitchell acting with co-defendants in violation of the aforementioned laws. Mr. Mitchell's role, however, in these offenses, is minimum and is least in culpability.

On December 5, 2015, Mr. Mitchell was the co-applicant in the purchase of a 2015 Dodge Durango. Mr. Mitchell used a social security number that was not assigned to him in purchasing the Durango. In March of 2016 Mitchell, along with codefendants, Earl Chapman and Julius Livingston traveled to the St. Louis, Missouri in the Dodge Durango in possession of personal identification information of others that included names, dates of birth, social security numbers and credit account numbers. In addition, **Chapman** was in

possession of counterfeit Illinois driver's licenses bearing his picture, but identifying information belonging to other individuals.

On March 8 & 9, 2016 **Chapman** and **Livingston** made multiple fraudulent purchases, totaling thousands of dollars, in the Saint Louis metropolitan area. Officers pulled over the Durango, (being driving by **Livingston)** after **Chapman** and **Livingston** made fraudulent purchases at a Target. A subsequent search of hotel rooms that the defendants were staying revealed a laptop, gift cards, credit cards and clothing items.

    a. Mr. Mitchell's Role in the Offense

As the fact as stated in the prior paragraph and as set out in the Presentence Report, Mr. Mitchell, clearly had a minor role in these offenses. The facts, clearly demonstrate that Mr. Mitchell was a minimal participant in the offense; that is, that he was one who 'played a minor role in the concerted activity. U.S.S.G. § 3B1.2 (b). Mr. Mitchell's vehicle was used to travel to the Eastern District of Missouri. Mr. Mitchell's conduct was wrong and he entered a plea of guilty for his conduct. Nevertheless, Mitchell's role was that of a minor participant. The facts in the presentence report show that. Unfortunately, the probation officer does not recommend any downward role-in-the-offense adjustment. This Court should make the appropriate adjustment.

Regardless though, of whether Mr. Mitchell qualifies for the downward adjustment, his limited participation in the offense is one of the "circumstances of the offense" characteristics that the Court is obligated to consider pursuant to 18 USC § 3553 (a)(1). That is the case, regardless of the Guidelines calculations: Judges may not simply assume that § 2D1.1 advances the purposes of sentencing spelled out in 18 USC § 3553(a).

Whether it does do so or not depends upon the circumstances of the individual case. Moreover, the failure to consider those circumstances is not simply unfair, it may well be unconstitutional. *United States v. Ennis,* 468 F.Supp 2d at 230.

B. The Kinds of Sentences Available

In Booker, the Supreme Court severed and excised 18 U.S.C. § 3553(b), the portion of the federal sentencing statute that made it mandatory for courts to sentence within a particular sentencing guidelines range. Booker, 125 S. Ct. at 756. This renders the sentencing guidelines advisory. Id.

Mr. Mitchell has limited criminal history. His role in this case was minor as his vehicle was used to travel to this District. He, frankly, is an individual for whom a guideline sentence makes no sense.

*Booker's* mandate was that the sentencing guidelines are not binding and courts have discretion to impose a wide variety of sentences. Many courts have done precisely this. *See, e.g., United States v. Jones,* 325 F. Supp 2d 22, 25 (D. Maine 2005) (varying from guidelines to impose sentence of home detention despite fact that departure under sentencing guidelines not warranted); *United States v. Kelley,* 355 F. Supp. 2d 1031 (D. Neb. 2005) (sentence of home detention); *United States v. Niemoeller,* No. 02-09-CR-1, 2005 WL 1799456 (S.D. Ind. July 15, 2005) (same).

Under § 3553(a)(3), the Court must consider the availability of all options in determining the proper sentence in this case. For the reasons discussed such a sentence should be imposed.

C. The Sentencing Guidelines

The pre-sentence investigation report determines Mr. Mitchell's sentencing guideline range as 27 months to 33 months' imprisonment based on an offense level of 18 and a criminal history category of I. This calculation was based on the 2016 version of the Sentencing Guidelines.

Imposition of a fine is discretionary, and Mr. Mitchell respectfully submits should not be ordered in this case due to the amount of the potential restitution in this case.

The pre-sentence report notes that restitution in this case totals $37,375.27. As indicated in the attached documents, Mr. Mitchell will be able to satisfy his obligation to pay restitution. The court should consider Mr. Mitchell's ability to pay restitution in determining the appropriate sentence

As discussed above, *Booker* and 18 U.S.C. § 3553(a)'s parsimony provision impose a statutory cap on sentences, no matter what is recommended under the sentencing guidelines: the sentence must be "sufficient, but not greater that necessary" to achieve the purposes of punishment; the community's interest in public safety; deterrence, both specific and general; and likely recidivism. Here it is respectfully submitted that a sentence of sixteen (16) months is sufficient to achieve the goals of punishment, deterrence and respect for the law.

For the reasons discussed above, Mr. Mitchell respectfully requests that the Court impose a sentence of sixteen (16) months with a reasonable term of supervised release to follow. We submit that this proposed sentence is sufficient but not greater than necessary to satisfy this Court's sentencing objectives as set forth in §3553 (a).

Respectfully Submitted,


/s/ Raphael Morris II
_____
Raphael Morris II #55245MO
6101 Delmar Blvd., Suite A
St. Louis, MO  63112
(314) 241.5900 Office
(314) 241.5902   Fax
rm@themorrisfirmSTL.com
**ATTORNEY FOR DEFENDANT**